# 8257

KANSAS FLOUR MILLS CO.,

versus

LOUISIANA RAILWAY & NAVIGATION CO.

NO. 8257

COURT OF APPEAL

PARISH OF ORLEANS

WILLIAM A. BELL, JUDGE:

22-627

Court of Appeal,
PARISH OF ORLEANS

FILED MAY 8/22

8257

BY: WILLIAM A. BELL, JUDGE:

Plaintiff sues defendant for loss suffered through damage to certain shipments of flour, aggregating 2,000 bags, while same was stored in defendant's flour-warehouse, in the City of New Orleans, during less than a month, approximately from the middle of August to the middle of September, 1917.

It is alleged that after the flour was stored in the warehouse of the defendant railway company, same became infested with bugs and weevils, then and there existing in said warehouse, contrary to its contract of carriage, to safely transport and warehouse said flour upon its arrival in New Orleans.

The petition first alleges that because of the weevilly condition of the flour, the consignees refused acceptance thereof on arrival, but by subsequent stipulation between counsel and before trial, it was agreed to as a fact, without necessity of amended pleading or proof, that the consignees had simply failed to call for the flour. It is finally alleged that the flour was sold at the highest price that could be secured, resulting in a loss to plaintiff of $983.41.

Defendant admits the shipment, and final warehousing of the flour; avers that upon refusal of the shipper, or consignee, to take possession of the flour on its arrival, or to receive it within reasonable time after its arrival, defendant's responsibility as a common carrier ceased, and thereafter it was only liable as a public warehouseman, and in said capacity received and unloaded the flour into its warehouse, a place which was entirely free from insects of any kind. It is further averred, however, that on or about September 8, 1917, long after delivery of the flour should have been accepted, and while defendant was holding the flour in his capacity as a warehouseman, little brown bugs, in sufficient number to

495

attract attention, began to appear in the warehouse, without any fault or negligence on the part of the defendant. Further answering, defendant denies that any weevils appeared in the warehouse, or infested the flour, and avers that the bugs which did appear did not bore through the flour bags, or enter the flour, except in so far as they might have entered through apertures already existing in the flour bags. It concludes its answer with the statement that it did all in its power to exterminate the insects, which apparently did no damage to the flour, and that in the same warehouse where plaintiff's flour was stored, there were many other shipments of flour for other parties, and that no complaints were ever made by anyone else that said insects had caused damage to their flour, at or during the time when plaintiff claimed damage to have been sustained to its flour.

The issues in this case are as simple as the evidence adduced at the trial. The whole contention is that the defendant, as a warehouseman, received plaintiff's flour in a warehouse infected with weevil, in violation of the contract between it and the plaintiff covering an agreement for safe carriage and warehousing.

It is admitted by defendant that the warehouse wherein plaintiff's flour was stored was infected during the time when the flour in question was under the custody of defendant, as warehouseman, but it is particularly denied that the condition existing was through any fault or negligence of the defendant. This is the whole issue in the case, whether or the weevilly condition of the flour began while same was in the warehouse of the defendant company, and whether defendant was in any manner liable for the condition, if same existed.

From the evidence in the case it appears that defendant not only substantiated the allegations of plaintiff's petition that the flour in question was infected with weevil, but through its own witnesses substantially proved this fact, by offering in evidence a bottle containing certain bugs or insects

496

found in the flour, or around the sacks, and in the warehouse. This exhibit has not been brought before the Appellate Court, but the evidence shows that the many witnesses, both for plaintiff and defendant, to whom this bottle was exhibited, declared the insects contained therein to be the common weevil, such as appears in flour.

The plaintiff has conclusively proven that the flour when shipped from its mills in Kingman, Kansas, was freshly milled and carefully loaded into cars free from any weevil infection. We are satisfied from the evidence that the weevilly condition of this flour arose while in defendant's warehouse at New Orleans, but a most careful weighing of all the testimony in this case has not convinced us that the condition of the flour resulting in its sale at a loss to plaintiff,was such a condition as arose, or could have arisen, from the fault or negligence of the defendant. Defendant's liability can only arise in this case upon specific evidence, the proof of which under the conditions of this case, must be assumed by the plaintiff, that the cause of the weevilly condition of the flour arose through some act of omission or commission on the part of the defendant, under his liability not as a carrier, but as a warehouseman.

The first theory of defense by which the warehouseman in this case has first sought to avoid liability, seems from the pleadings to have been predicated upon the allegation that the plaintiff's goods were contaminated or infected by insect life arising in the warehouse, beyond the fault or control of the defendant. From the evidence, however, admitted without objection, defendant finally sought to prove, upon facts well established, not only by his own witnesses, but those of his adversary, that the flour in question, at the time of the year under which the storage arose, was inherently susceptible to generating spontaneously the bugs or weevils found in such large quantities in plaintiff's flour. If, through no fault of defendant, the condition in the flour arose from some natural causes

497

inherent in the goods themselves, or from atmospheric conditions well known to exist by all the parties to the contract, it cannot be charged by the plaintiff that the defendant was at fault.

The testimony shows, without contradiction of any witnesses of either plaintiff or defendant, that it is the inherent nature of flour, in southern climate, during the months of August and September, to generate insect life, first through the worm, and then through the weevil, or after-insect life of the worm.

To this effect, one of defendant's own witnesses, for thirty or forty years a flour expert, testifies that regular flour worms come from hot climate, and will produce small insect life, and afterwards, both bugs and worms, and that this condition was found in the flour in question. Another of plaintiff's witnesses states that these bugs and worms were found in the flour, little worms, particularly, after the bags were opened up, and a third witness of five years experience in the flour business, and who, with the second of plaintiff's witnesses was the joint purchaser of the defective flour, when sold as such out of the warehouse, corroborates these facts by saying that the bags were found full of bugs and worms and weevils, and that little bugs on the outside and around the bags were found, and that worms six inches deep in the sacks were also found.

The largest consumer of flour, as a baker, in the City of New Orleans, and one who has been engaged in the business for over forty years, and whose bakery business consumed as much as sixty barrels of flour per day, established beyond doubt that flour, in warm climate, is subject to the weevil pest, and as stated by said witness, these insects or weevils "grow in the flour," or as another witness for defendant said, "they make it their home."

We find from the evidence, therefore, that in the flour itself, was the worm in question, and in and about the flour bags and the warehouse, was the weevil, arising from the

498

flour worm. It is true that one of defendant's witnesses specifically stated on cross-examination, that the condition found in plaintiff's flour should never arise in new or fresh flour, less than five weeks old. The flour in this case appears to have been shipped from the plaintiff's mills within less than five weeks before the weevilly condition thereof was discovered, and from this fact it may be presumed that the flour was not infected at the time of shipment, but the burden of proof has not been assumed by plaintiff, upon whom it rightly lies, to establish the fact that the inherent tendency to spontaneous generation of insect life arose through any fault of the defendant. From the evidence of the experts, it must be assumed, in the absence of proof to the contrary, that the defendant had no control whatever over these conditions.

Neither carriers nor warehousemen are liable for damages to goods in their care occasioned by exceptional and uncontrollable events, when they could not have avoided the consequence of these events by the exercise of due diligence. The carrier is, however, burdened with the duty of showing, when goods are damaged while in his custody, why and how such damage arose, and that it was due to such causes as would exonerate him, the owner of such goods in such cases being only required to allege the loss or damage arising to his goods while in the custody of the carrier.

On the other hand, the warehouseman is a bailee for hire, and as such, is only charged with the observance of such care as a prudent man would give to his own property. If it can be shown that as warehouseman, he has failed to exercise such care as a reasonably careful owner of goods would, under similar conditions, exercise, then the liability must be assumed by him, and proof of his inability to avoid the damage arising, becomes a burden which the law places upon him, and not upon the owner.

Plaintiff's counsel cites many authorities by this Court in support of the doctrine that the warehouseman, or bailee must exercise that care which devolves upon a prudent man who would give protection to others, as to his own goods, while in his possession, but none of these authorities undertake to establish the doctrine that such liability arises as against a warehouseman when the goods in his custody are, of their own inherent nature susceptible of causing damage or defects, over which the warehouseman, under the closest exercise of care, cannot avoid.

Counsel for plaintiff in argument stresses the point that the burden of proof rests upon a bailee for hire, to establish such facts as might excuse him, and to show that he exercised at least the care that a prudent man takes of his own property. We take no issue with counsel as to this well established doctrine in support of which he has cited the case of Scott v. Sample, 148 La. p. 627. In that case, as in the instant one, the bailee failing to deliver the goods in such condition as existed when they were received by him, the Court held that the burden devolved upon the bailee to show that the goods in question, which were damaged by fire, were not damaged by any fault or negligence of the bailee. But after this defense was offered by the bailee, whereby it was attempted to establish that the cause of the damage was through some agency beyond and outside of the bailee's control, the Court held that the burden then shifted to the shoulders of the bailor to prove that this outside cause of the damage could have been avoided by the care of an ordinary prudent man. The doctrine is thus stated:

> "It is true, as shown by the authorities cited by plaintiff, that where a bailee fails to return property entrusted to his care, he bears the burden primarily, of showing why he has failed to do so. But, when he has shown that the cause was due to destruction of the bailed goods by fire, the burden again shifts to the shoulders of the bailor, to show that the fire (contrary to the case of a common carrier, inn-keeper, etc.) was by the bailee's negligence."

In the instant case, defendant has proven to the

satisfaction, no doubt, of our brother of the Lower Court, and certainly to our satisfaction, that the damage to the flour in question was due to an agency inherent, spontaneous, or what-not, over which defendant had no control. This defense being the one finally offered by the bailee, it devolves upon the plaintiff in this case to prove that the circumstances leading to the defects in the flour were caused by imprudence of the defendant company.

The conditions under which the liability of a warehouseman handling goods perishable or inherently defective, would become liable therefor, are stated with clearness in 40 Enc. of Law and Procedure, pp. 472 - 473, as follows:

"A warehouseman to whom goods are delivered in good condition, is prima facie negligent where the goods are returned in a damaged condition, only when the goods are of such a nature that loss or damage could not ordinarily have occurred without negligence, and the rule does not apply where they would deteriorate or perish from inherent defects or natural causes.

The burden of proof, in an action of injury to the goods due to improper temperature is upon plaintiff to show that the injury resulted from defendant's fault alone, and not from the inherent nature of the goods."

We find this doctrine clearly and particularly cited in the case of Cunningham v. Franklin Reed & Co., 48 Ga., 531, where the Court said:

"The warehouseman, by the law, is a depository for hire, and is bound only for ordinary diligence. If the defendants exercised that ordinary diligence in taking care of plaintiff's cotton stored with them, which a prudent man would have in protecting and taking care of his property, and the cotton lost in weight, without their fault or negligence, they are not liable for such loss, and it was incumbent upon the plaintiff to prove that the loss of the weight of the cotton was the result of negligence and want of care in the proper management of it. It is not sufficient for the plaintiff to prove that the cotton stored with the defendants lost in weight, but he must go further, and prove that the loss resulted from the negligence and want of proper care on the part of the defendants as warehousemen."

In Crescent Forwarding and Transportation Co., v. New Orleans Box Manufacturing Company, 6 Orleans App.,412, this Court held that it was elementary that the burden of proof is upon the bailee, to show cause that the injury to, or loss of the thing stored was due to no fault or negligence of his, but as shown in the case of Scott v. Sample, above quoted, and other well considered authorities, the doctrine is clear that where perishable goods, or goods which may be inherently defective, or may become so through their inherent nature, are damaged while in storage, negligence cannot be assumed from the ere fact of the damage, but the negligent acts or omissions causing the damage must be affirmatively proven. Patterson v. Wenatchee Canning Company, 101 Pac., 721.

We are of the opinion that plaintiff has failed in carrying the burden rightly placed upon him by the law, to prove that the defects in the property under bailment were, in this case, due to any lack of observance on the part of defendant of that degree of care required of it as warehouseman, or bailee.

In addition to the abundance of proof established herein by both plaintiff and defendant, that the weevilly condition of the flour was caused by its inherent nature , induced by local atmospheric conditions, it seems that no contamination could have, in all probability, arisen by other flour in the warehouse, because defendant has shown conclusively that during the month of August, and half of September, many thousand sacks of flour of many other dealers were stored in the warehouse in question, without complaint from any of said dealers or consignees that conditions existed in their goods similar to those found in plaintiff's goods.

We find no error in the judgment of the Lower Court.

JUDGMENT AFFIRMED.